IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DERRICK DARNELL PORTER,        §
TDCJ #1027581,                 §
                               §
            Petitioner,        §
                               §
v.                             §        CIVIL ACTION NO. H-04-4673
                               §
DOUG DRETKE, Director,         §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,     §
                               §
            Respondent.        §

## MEMORANDUM AND ORDER

State inmate Derrick Darnell Porter seeks a federal writ of habeas corpus under 28

U.S.C. § 2254 to challenge a state court felony conviction.  The respondent has filed a

motion for summary judgment, arguing that Porter is not entitled to federal habeas corpus

relief because his petition is barred by the governing one-year statute of limitations.  (Docket

Entry No. 6).  Porter has filed more than one motion in response.  (Docket Entry Nos. 8, 9,

10).  After considering all of the pleadings, the state court records, and the applicable law,

the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.    BACKGROUND

A Texas grand jury returned an indictment against Porter in cause number 865786,

charging him with capital murder for causing the death of Randall Blasdel during the course

of an aggravated robbery that was perpetrated under the guise of a drug deal gone bad.  The

State enhanced the indictment with allegations that Porter had at least three prior felony

convictions for drug-related offenses.  Porter was convicted by a jury in the 248th District

Court of Harris County, Texas.  Because the State did not elect to seek the death penalty, the

trial court sentenced Porter to life imprisonment on January 30, 2001.

On direct appeal, Porter challenged the legal and factual sufficiency of the evidence.

*See Porter v. State*, No. 10-01-122-CR (Tex. App.—Waco, Jan. 16, 2002).  The

intermediate court of appeals summarized the facts of the offense as follows:

> According to the testimony of Juan Rodriguez, Porter pretended to
> arrange a purchase of 200 pounds of marihuana from Rodriguez, with whom
> he was previously acquainted.  They met in a parking lot to make the deal.
> Porter, who is black, was with another black male in a green Jeep.  Rodriguez
> was driving an Impala.  Later that afternoon, the three met at a motel where
> Rodriguez had rented a room.  When they got inside, the black male pulled out
> a 9-millimeter pistol, pushed Rodriguez to the floor, and threatened to kill him.
> He ordered Rodriguez to undress except for his boxers, and he told Porter to
> collect Rodriguez's clothes and other belongings.  Some of the marihuana was
> in the room, and Porter retrieved it.  The Porter took the marihuana and
> Rodriguez's possessions to where the vehicles were parked to look for the rest
> of the marihuana in the Impala; he covered his face with a shirt or towel when
> he left the room.  Rodriguez testified at trial that he saw the black male stand
> at the door and nod in the direction of the parking lot.  Then the black male
> shot Rodriguez four times.
>
> The motel manager testified that he heard the shots.  He saw a black
> male he testified was not Porter and a white male he did not know (Randall
> Blasdel) arguing in the parking lot.  Seconds later he heard a gunshot and saw
> the black male run to a Jeep and drive off.  Blasdel, an innocent bystander
> staying at the motel on business, happened to be walking near the Jeep when
> the black male approached it, and the black male killed him by shooting him
> in the neck.  A third-party witness, who saw both the Jeep and the Impala enter
> the parking lot, said Blasdel's shooting occurred about ten minutes after he
> first saw the cars.  Evidence from shell casings proved that a different gun
> from the one used to shoot Rodriguez was used to murder Blasdel.  The state's
> theory at trial was that the shooter had two pistols and the one he used to shoot
> Rodriguez jammed, proven by the fact that only three shell casings were found

in the motel room.  Porter suggested at trial that Rodriguez shot Blasdel from the motel room.

Rodriguez testified he saw his Impala being driven away.  The inference is that Porter, using Rodriguez's car keys, found the remaining marihuana in the Impala and drove away in it, while the black male left in the Jeep.

Throughout the trial, it was suggested that the identity of Porter's accomplice was "David Johnson."  There was testimony from Greg Leday, who placed Porter and Johnson together in the Jeep the morning of the shooting.  He said Porter and Johnson left him about 2:00 p.m. to buy some drugs.  He saw them together later that night.  Documents proved the Jeep was rented by Johnson. . . .

*See id*. slip op. at 2-3 (footnote omitted).  The intermediate court of appeals found the evidence sufficient to convict Porter under the "law of parties," which can result in criminal responsibility for acts committed by another, and affirmed the conviction.  *See id*. slip op. at 9-10.  The Texas Court of Criminal Appeals refused Porter's petition for discretionary review on June 19, 2002.

Porter filed the pending petition for a federal writ of habeas corpus on December 3, 2004.[1]  Porter contends that he is entitled to federal habeas corpus relief from his conviction for the following reasons: (1) there was insufficient evidence to support his conviction; (2) he was denied effective assistance of counsel at trial and on appeal; (3) the prosecutor and

---

[1]   The Clerk's Office received the petition on December 9, 2004.  However, Porter executed the petition on December 3, 2004, suggesting that he placed his pleadings in the prison mail system on that date.  For statute of limitations purposes, courts in this Circuit treat the date a *pro se* prisoner deposits a federal habeas corpus petition in the mail as the filing date.  *See Fisher v. Johnson*, 174 F.3d 710, 712 n.8 (5th Cir. 1999) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (per curiam)), *cert. denied*, 531 U.S. 1164 (2001).

police officers investigating his case committed misconduct which deprived him of a full and fair trial; and (4) his life sentence is cruel and unusual punishment because it is grossly disproportionate in light of his role in the offense.  The respondent has filed a motion for summary judgment on the grounds that Porter's petition is barred by the governing one-year statute of limitations.  In response, Porter has filed several motions asking the Court to take "judicial notice of adjudicative facts."   The parties' contentions are addressed below, beginning with a brief discussion of the petitioner's motions for judicial notice.

## II.   PETITIONER'S MOTIONS

In response to the summary judgment motion filed by the respondent, Porter has filed three motions for judicial notice of adjudicative facts.  (Docket Entry Nos. 8, 9, 10).  Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."  FED. R. EVID. 201(b).  The motions and exhibits attached thereto do not fit within the criteria for judicial notice under Rule 201.  For example, one of the motions contains a magazine article that is critical of certain views taken by a justice on the Texas Court of Criminal Appeals in a case that is unrelated to Porter's.  (Docket Entry No. 9).  Likewise, the motions for judicial notice filed by Porter contain argument in response to the respondent's summary judgment motion.  To the extent that Porter asks the Court to take judicial notice of the matters referenced therein under Rule 201, his motions are denied.   However, the Court will

4

consider all pleadings filed by the petitioner, including his motions for judicial notice, as a response to the summary judgment motion.

## III.   STANDARD OF REVIEW

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to point out the absence of evidence supporting the nonmovant's case.  *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; and *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be  reviewed in the light most favorable to the nonmoving party.  *Hotard v. State Farm*

*Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## IV.   **DISCUSSION**

### A.   **The One-Year Statute of Limitations**

According to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), all federal habeas corpus petitions filed after April 24, 1996, are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

6

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Because the pending petition was filed well after April 24, 1996, the one-year limitations period clearly applies.  *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

In this case, the statute of limitations for federal habeas corpus review began to run pursuant to 28 U.S.C. § 2244(d)(1)(A) at "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  The respondent has presented records and an affidavit from the Clerk of the Texas Court of Criminal Appeals reflecting that Porter's petition for discretionary review ("PDR") was

7

refused on June 19, 2002.[2]  Porter did not file a petition for rehearing from that decision.

Likewise, although he did not file a petition for a writ of certiorari with the Supreme Court,

Porter's time to do so expired ninety days later on or about September 17, 2002.  *See* SUP.

CT. R. 13.1 (West 2005).  That date triggered the one-year statute of limitations, which

expired no later than September 17, 2003.  Porter's pending petition, signed by him on

December 3, 2004, is late by well over a year and is therefore time-barred unless an

exception applies.

**B.     Statutory Tolling**

Under 28 U.S.C. § 2244(d)(2), the time during which a "properly filed" application

for "[s]tate post-conviction or other collateral review" is pending shall not be counted toward

the limitations period.  *See Artuz v. Bennett*, 531 U.S. 4 (2000).  The record reflects that

Porter filed a state application for habeas corpus relief on October 10, 2003,[3] which the

---

[2]      In his petition and supporting memorandum, Porter comments his PDR was refused on July
5, 2002, referencing the "final" disposition date shown on a computer print-out from the
Texas Court of Criminal Appeals.  (Docket Entry No. 5, Appendix 2).  That same exhibit
tendered by Porter reflects, however, that his PDR was refused on June 19, 2002.  (*See id.*).
The exhibits included with the respondent's motion for summary judgment clarify that the
Texas Court of Criminal Appeals refused Porter's PDR on June 19, 2002, and that the time
for filing a petition for rehearing expired on July 5, 2002.  (Docket Entry No. 6, Ex. A).
Porter does not dispute that his PDR was actually refused on June 19, 2002.  Accordingly,
this is the date Porter's conviction became final.

[3]      Porter contends that the petition was received by the Harris County District Clerk's Office
on October 6, 2004.  The file-stamped copy in the state court records reflects, however, that
Porter's pleadings were received and filed on October 10, 2004.  *See Ex parte Porter*, No.
59,649-02 at 11, 700.  Even assuming that Porter's state habeas corpus application was
received by the District Clerk's Office on October 6, 2004, his application still would have
been late and would not have tolled the limitations period under 28 U.S.C. § 2244(d)(2).  *See*
(continued...)

Texas Court of Criminal Appeals denied on November 10, 2004. *See Ex parte Porter*, No. 59,659-02. Because this proceeding was filed after the limitations period had already expired, this application does not have any tolling effect for purposes of § 2244(d)(2). *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (noting that the statute of limitations is not tolled by a state habeas corpus application filed after the expiration of the limitations period); *see also Pace v. DiGuglielmo*, — U.S. —, 125 S. Ct. 1807 (2005) (an untimely filed state habeas corpus application does not toll the statute of limitations).

Porter argues that he is entitled to tolling from the date he executed his state application and placed it in the prison mail system on September 27, 2003. The Fifth Circuit has held, however, that the "mailbox rule" does not extend to the determination of filing dates for state habeas applications. *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000). Instead, when a prisoner asserts that his ability to file a federal habeas petition has been affected by a state proceeding, courts examine whether the prisoner is entitled to equitable tolling. *Id.* Tolling to the date the application was executed will not benefit Porter here. Even if such tolling were allowed, Porter's state habeas corpus application and supporting memorandum were signed by him on September 27, 2003, which is still beyond the AEDPA's one-year statute of limitations period that expired on or about September 17, 2003.

---

[3](...continued)
      *Scott*, 227 F.3d at 263

Porter also points to a motion for appointment of counsel that he filed for purposes of pursuing DNA testing under Article 64.01 of the Texas Code of Criminal Procedure. That motion was received for filing with the Harris County District Clerk's Office on June 30, 2003. (Docket Entry No. 10, Appendix 17). A motion for appointment of counsel is not a properly filed application for state post-conviction relief or other collateral review and does not toll the statute of limitations under § 2244(d)(2). *See, e.g., Fierro v. Cockrell*, 294 F.3d 674, 680-81 (5th Cir. 2002) (holding that a preliminary motion that is not itself an application for a writ of habeas corpus does not toll the statute of limitations), *cert. denied*, 538 U.S. 947 (2003).

Porter later filed a motion for DNA testing under Article 64.01 in December of 2003.[4] (Docket Entry No. 5, Appendix 16). The Fifth Circuit has not addressed this issue, and thus it is unclear whether such a proceeding may qualify as an application for "other collateral review."[5] *See Carillo v. Dretke*, No. 3-04-CV-1955-K, 3-04-CV-1956-K, 2004 WL

---

[4]     Porter provides a copy of the motion that he received from his attorney, but it is unsigned and undated. (Docket Entry No. 5, Appendix 16). However, the cover letter is dated December 30, 2003.

[5]     Article 64.01 provides that, in certain circumstances, "[a] convicted person may submit to the convicting court a motion for forensic DNA testing of evidence containing biological material." TEX. CODE CRIM. PROC. ANN. art. 64.01 (Vernon Supp. 2004-2005). If evidence was previously subjected to DNA testing, the convicted person must demonstrate in his motion that the evidence can be "subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test." TEX. CODE CRIM. PROC. ANN. art. 64.01(b)(2); *Dinkins v. State*, 84 S.W.3d 639, 642 (Tex. Crim. App. 2002). A post-conviction motion for DNA testing has been characterized by the Texas courts as an independent proceeding that "makes a collateral inquiry into the validity of the conviction." *Cravin v. State*, 95 S.W.3d 506, 510 (Tex. Crim. (continued...)

3008605, *2 (N.D. Tex. Dec. 28, 2004) (holding that a post-conviction motion for DNA testing is not one for "other collateral review" and does not toll the limitations period under § 2244(d)(2)). However, even assuming that such a motion did qualify as "other collateral review," Porter's motion for DNA testing was not actually filed until December of 2003, after the AEDPA's statute of limitation has already expired. Such an application does not toll the AEDPA's statute of limitations for purposes of § 2244(d)(2). *See Scott*, 227 F.3d at 263.

Porter points out that he filed a motion to compel on June 1, 2004, which was construed as a motion for leave to file a writ of mandamus. The Texas Court of Criminal Appeals denied leave to file a writ of mandamus on the same day that his state habeas corpus application was denied on November 10, 2004. *See Ex parte Porter*, No. 59,659-01. The Fifth Circuit has held that applications for a writ of mandamus are not "other collateral review" as contemplated by 28 U.S.C. § 2244(d)(2). *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002). Accordingly, the time during which Porter's application for a writ of mandamus was pending does not count for purposes of statutory tolling.

Porter has not alleged that he was subject to state action that impeded him from filing his petition in a timely manner. *See* 28 U.S.C. § 2244(d)(1)(B). Further, there is no showing of a newly recognized constitutional right upon which the petition is based; nor is there a factual predicate for the claims that could not have been discovered previously if the

---

[5](...continued)
App. 2002) (citing *United States v. Hayman*, 342 U.S. 205, 222-23 (1952)).

petitioner had acted with due diligence.  *See* 28 U.S.C. § 2244(d)(1)(C), (D).  Accordingly, there is no other statutory basis under the AEDPA to save the petitioner's late-filed claims.

### C.    Equitable Tolling

Porter has filed a lengthy memorandum in support of his petition, which is accompanied by numerous exhibits.  Porter has also filed as many as three motions in response to the summary judgment motion, in which he argues that he is entitled to equitable tolling.  (Docket Entry No. 8, at 3-4).  Pointing to the long delay between the time that the Texas Court of Criminal Appeals refused Porter's PDR, and the time Porter initiated state habeas review, the respondent argues that equitable tolling is not available.

The statute of limitations found in the AEDPA may be equitably tolled at the district court's discretion where "exceptional circumstances" are present.  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is an extraordinary remedy that is only sparingly applied.  *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The Supreme Court has noted that a habeas corpus petitioner seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  *Pace*, 125 S. Ct. at 1814.  In that respect, the doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  *Melancon v.*

*Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

In this case, the Texas Court of Criminal Appeals refused Porter's PDR on June 19, 2002.  Porter did not challenge that decision by filing a petition for rehearing or a petition for a writ of certiorari with the United States Supreme Court.  The record shows that Porter waited almost a year to execute a motion for appointment of counsel to seek DNA testing on June 6, 2003, which the Harris County District Clerk's Office received for filing on June 30, 2003.  The record shows further that Porter executed his state habeas corpus application on September 27, 2003, more than a year after his conviction had become final and the statute of limitations for federal habeas review had already expired.  This record demonstrates a substantial delay on Porter's part, and he offers no valid explanation for his failure to promptly pursue habeas corpus relief during this period.

Equitable tolling is not available where, as here, the petitioner orchestrates his state court proceedings in such a way that squanders his federal limitations period.  *See, e.g., Ott v. Johnson*, 192 F.3d 510, 514 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099 (2000).  Although the petitioner proceeds *pro se*, his incarceration and ignorance of the law do not otherwise excuse his failure to file a timely petition and are not grounds for equitable tolling.  *See Fisher*, 174 F.3d at 714; *see also Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2003) (noting that a petitioner's ignorance or mistake is insufficient to warrant equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (finding that "lack of

knowledge of the filing deadlines," "lack of representation," "unfamiliarity with the legal process," illiteracy, and "ignorance of legal rights" generally do not justify tolling).

Likewise, Porter's claim of actual innocence does not warrant equitable tolling. Although Porter argues that the evidence will establish his actual innocence, he concedes that his DNA testing proceeding in the state courts is not yet complete.[6]   Because Porter has not shown himself to be actually innocent, there is nothing in the petition which excuses his failure to timely file his petition.  *See Felder*, 204 F.3d at 171 (noting that claims of actual innocence are not a "rare and exceptional circumstance" which justifies equitable tolling of the statute of limitations given that many prisoners maintain they are actually innocent).

The Court is mindful of the effect a dismissal will have on the petitioner's ability to have his claims heard by a federal court.[7]  *See Felder v. Johnson*, 204 F.3d 168, 173 (5th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).  However, the Fifth Circuit has emphasized that the "strict one-year limitations period" imposed by Congress for the filing of all habeas

---

[6]     Porter suggests that he should be entitled to equitable tolling for the DNA testing proceeding initiated by his appointed counsel in December 30, 2003.  Porter reports that there has not been a ruling yet in that proceeding.  The Court notes that, although the petition raises challenges to the sufficiency of the evidence, Porter has not advanced a claim of actual innocence in this federal habeas proceeding and he has not yet presented such a claim on state habeas corpus review.  The affidavit attached to his motion does not clearly show that the evidence sought for testing would establish Porter's innocence in any event because he was convicted as a party to the underlying offense.  Nevertheless, any claim stemming from the DNA testing proceeding now pending before the state courts is unexhausted for purposes of 28 U.S.C. § 2254(b) and not properly before this Court.

[7]     The Court notes, however, that the petitioner's claims were apparently raised and rejected on state habeas corpus review on findings made by the state habeas corpus court, which also presided over Porter's trial.

14

corpus petitions is "subject only to the narrowest of exceptions." *Fierro*, 294 F.3d at 684. Given the petitioner's apparent lack of diligence in this case, the Court concludes that his circumstances are not among those "rare and exceptional" conditions which warrant deviation from the express rules that Congress has provided. *See Felder*, 204 F.3d at 173. Accordingly, equitable tolling will not save his late-filed claims. The Court therefore concludes that his pending federal habeas corpus petition is barred by the applicable one-year limitations period. The respondent's motion for summary judgment on this issue is granted.

## V.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, — U.S. —, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the

controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The one-year statute of limitations found in the AEDPA has been in place since 1996. Given that the issues presented involve clearly settled areas of law, the Court concludes that jurists of reason would not debate whether the procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue in this case.

## VI.   **CONCLUSION AND ORDER**

For all of the foregoing reasons, the Court concludes that the petitioner is not entitled to relief. Accordingly, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Docket Entry No. 6) is **GRANTED**.

2.    This federal habeas corpus proceeding is **DISMISSED** with prejudice as barred by the statute of limitations.

16

3.      A certificate of appealability is **DENIED**.

4.      The petitioner's motions for judicial notice (Docket Entry Nos. 8, 9, 10) are **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on **May 19, 2005**.

Nancy F. Atlas
United States District Judge

17